**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| ELIJAH D. STEWARD,<br><br>        Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>        Defendants. | Case No. 2:26-cv-00065-LEW |

<u>**EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THESE PROCEEDINGS AND MEMORANDUM OF LAW IN SUPPORT**</u>

Under Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), Defendant Experian Information Solutions, Inc. ("EIS") respectfully moves for an order compelling all claims against EIS to arbitration and, pursuant to Section 3 of the FAA, staying this action as to EIS only until arbitration has been completed.  Plaintiff opposes the Motion and relief sought herein.

### **<u>INTRODUCTION</u>**

This is an action under the Fair Credit Reporting Act. The plaintiff, Elijah Steward, alleges that Experian Information Solutions, Inc. ("EIS") incorrectly reported information appearing in his credit file in violation of the FCRA.  Pursuant to Plaintiff's written agreement, EIS elects to adjudicate Plaintiff's claims in arbitration before the American Arbitration Association.

The outcome of this motion should be the same that in in *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194 (4th Cir. 2025), *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343 (11th Cir. 2025), *Newton v. Experian Info. Sols., Inc.*, 2025 WL 2102084 (11th Cir. July 28, 2025), *Meeks v. Experian Info. Sols. Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022), *Borukh v. Experian Info. Sols., Inc.*, 2025 WL 1220042 (E.D.N.Y. Apr. 28, 2025), *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024), *Alvarez v. Experian Info. Sols. Inc.*, 2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023), *Cimillo v. Experian Info. Sols. Inc.*, 2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023), *Levy v. Experian Info. Sols. Inc.*, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023), *Rubio v. Experian Information Solutions, Inc.*, 2025 WL 2172207 (E.D. Cal. July 31, 2025), *Bryant v. Experian Info. Sols., Inc.*, 2025 WL 313204 (C.D. Cal. Jan. 27, 2025), *Walker v. Experian Info. Sols., Inc.*, 2025 WL 1584680 (E.D. Ky. June 4, 2025), *Aguiar v. Experian Info. Sols., Inc.*, 2025 WL 1531433 (E.D. Cal. May 29, 2025), *Browning v. Experian Info. Sols., Inc.*, 2025 WL 1503973 (S.D. Ind. May 25, 2025), *Lawrence v. Experian Info. Sols., Inc.*, 2025 WL 1431272 (N.D. Ga. May 15, 2025), *Nirandone v. Experian Info. Sols., Inc.*, 2025 WL 1427452 (D.

1

R.I. May 13, 2025), *Penn v. Experian Info. Sols., Inc.*, 2025 WL 1427440 (C.D. Cal. May 6, 2025), *Dicandia v. Experian Info. Sols., Inc.*, 2025 WL 903629 (M.D. Fla. Mar. 25, 2025), *Martin v. Experian Info. Sols. Inc.*, 2025 WL 729274 (M.D. Fla. Mar. 5, 2025), *Wells v. Experian Info. Sols., Inc.*, 2025 WL 475846 (E.D. Va. Feb. 12, 2025), *Goldsberry v. Experian Info. Sols., Inc.*, 2025 WL 699357 (E.D. Tex. Feb. 10, 2025), *Bryant v. Experian Info. Sols., Inc.*, 2025 WL 313204 (C.D. Cal. Jan. 27, 2025), *Hunt v. Experian Info. Sols. Inc.*, 2025 WL 104324 (M.D. Ga. Jan. 15, 2025), *Ellis v. Experian Info. Sols. Inc.*, 2025 WL 79637 (M.D. Fla. Jan. 13, 2025), *Jones v. Experian Info. Sols., Inc.*, 2025 WL 227198 (D. Minn. January 7, 2025), *Humphrey v. Experian Info. Sols., Inc.*, 2024 WL 5247164 (N.D. Ala. Dec. 30, 2024), *Acorin v. Experian Info. Sols., Inc.*, 2024 WL 5011950 (S.D. Cal. Dec. 6, 2024), *Oatway v. Experian Info. Sols., Inc.*, 2024 WL 4879822 (W.D. Wash. Nov. 25, 2024), *Buchanan v. Experian Info. Sols., Inc.*, 2024 WL 4817129 (W.D. Pa. Nov. 18, 2024), *Jenkins v. Experian Info. Sols. Inc.*, 2024 WL 4100258 (E.D. Va. Sept. 6, 2024), *Williams v. Experian Info. Sols., Inc.*, 2024 WL 3876171 (D. Ariz. Aug. 20, 2024), *Driskill v. Experian Info. Sols. Inc.*, 2024 WL 4453292 (N.D. Cal. Oct. 8, 2024), *Rangel v. Experian Info. Sols. Inc.*, 2024 WL 4203361 (E.D. Cal. Sept. 16, 2024), *Clark v. Experian Info. Sols. Inc.*, 2024 WL 4044130 (E.D. Cal. Sept. 4, 2024), *Taylor v. Experian Info. Sols., Inc.*, 2024 WL 5265371 (N.D. Ga. Dec. 31, 2024), *Scribner v. Trans Union LLC*, 2024 WL 3274838 (E.D. Cal. July 2, 2024), *Baker v. Experian Info. Sols. Inc.*, 2024 WL 3082644 (S.D. Ind. June 20, 2024), *George v. Experian Info. Sols. Inc.*, 2024 WL 3013146 (D. Md. June 14, 2024); *Hanson v. Experian Info. Sols. Inc.*, 2024 WL 2974160 (N.D. Ga. June 12, 2024); *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398 (D. Ariz. May 20, 2024); *Garcia v. Experian Info. Sols. Inc.*, 2024 WL 1117912 (N.D. Cal. Mar. 13, 2024); *Pecoraro v. Experian Info. Sols. Inc.*, 2023 WL 8525114 (S.D. Fla. Dec. 6, 2023), *Ferrell v. Experian Info. Sols. Inc.*, 2024 WL 158103 (C.D. Cal. Jan. 11, 2024),

2

*McLees v. Experian Info. Sols. Inc.*, 2024 WL 135940 (C.D. Cal. Jan. 11, 2024), *Evans v. Experian Info. Sols. Inc.*, 2023 WL 4714078 (C.D. Cal. July 21, 2023), *Knott v. Equifax Info. Servs., LLC*, 2023 WL 6940289 (N.D. Ga. Sept. 7, 2023), *Yates v. Experian Info. Sols. Inc.*, 2023 WL 4747386 (S.D. Tex. July 25, 2023), accepting Report and Recommendations in 2023 WL 5279467 (S.D. Tex. Aug. 16, 2023), *Johnson v. Southwest Recovery Services, Inc.*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023), accepting Report and Recommendations in 2023 WL 1944127 (N.D. Tex. Jan. 24, 2023)), *Roberson v. Experian Information Solutions, Inc.*, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022), *Sauer v. Experian Info. Sols. Inc.*, 2022 WL 2163016 (C.D. Cal. May 12, 2022), *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016 (C.D. Cal. 2022), *DeVries v. Experian Info. Sols. Inc.*, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017), *Saucedo v. Experian Info. Sols. Inc.*, 2023 WL 4708015 (E.D. Cal. July 24, 2023), *Capps v. Experian Info. Sols. Inc.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023), *Pipoly v. Experian Info. Sols. Inc.*, 2023 WL 5184188 (N.D. Ga. Aug. 2, 2023), report and recommendation adopted, 2023 WL 5438171 (N.D. Ga. Aug. 21, 2023), *Abukar v. Experian Info. Sols. Inc.*, 2023 WL 3394827 (E.D. Wis. Apr. 11, 2023), *Arciniega v. Experian Info. Sols. Inc.*, 2023 WL 6803084 (D. Ariz. Oct. 12, 2023), *Smith v. Experian Info. Sols. Inc.*, 2023 WL 6057377 (D. N.J. Sept. 14, 2023), *Kinkle v. Experian Info. Sols. Inc.*, 2023 WL 4105804 (S.D. Ind. June 21, 2023), *Solis v. Experian Info. Sols. Inc.*, 2023 WL 4474322 (M.D. Fla. July 11, 2023), *Morgan v. Experian Info. Sols. Inc.*, 2022 WL 681359 (W.D. Wash. Mar. 4, 2022), *Stephens v. Experian Info. Sols. Inc.*, 614 F. Supp. 3d 735 (D. Haw. 2022), *Coulter v Experian Info. Sols. Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021), and *Tadic v. Experian Info. Sols. Inc.*, 2019 WL 11499103 (N.D. Ga. Mar. 13, 2019).

Like the plaintiffs in the above-cited cases, Plaintiff is a member of CreditWorks, the name of Experian's credit monitoring service provided by EIS's affiliate, ConsumerInfo.com, Inc.

3

("CIC") (which does business as Experian Consumer Services ("ECS")). As in those cases, Plaintiff's membership in CreditWorks predates the filing of this lawsuit. There, like here, when Plaintiff enrolled in CreditWorks, he too agreed to the Terms of Use Agreement governing that service. That contract contains an Arbitration Agreement. The Arbitration Agreement defines "ECS" to include its "affiliates," including Defendant "Experian Information Solutions, Inc." During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS, as courts have found. *See, e.g.*, *Cimillo*, 2023 WL 2473403, at *5 n.7 ("[N]umerous courts considering the same or similar agreements involving EIS have found EIS is properly considered an affiliate under the same or similar Arbitration Agreements.").

The Arbitration Agreement provides that Plaintiff and "ECS"—which, again, is defined under the contract to include its affiliate, EIS—agreed to arbitrate "all disputes and claims between us" that arise out of, or relate to, his CreditWorks agreement, including claims under the "Fair Credit Reporting Act." As the Ninth Circuit and dozens of other courts have ruled, as a party to the Arbitration Agreement contained therein (by virtue of how ECS is defined under the contract), EIS may directly enforce the arbitration provision. *See Meeks*, 2022 WL 17958634, at *2; *Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Cimillo*, 2023 WL 2473403, at *5 (same); *Alvarez*, 2023 WL 2519249, at *6 (same); *Roberson*, 2022 WL 62270, at *2 (same); *Stephens*, 2022 WL 2716177, at *1 (same). At a minimum, however, EIS is a third-party beneficiary of the contract. *Alvarez*, 2023 WL 2519249, at *6 ("Even if [EIS] could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, [EIS] may do so.").

The Arbitration Agreement in the CreditWorks Terms of Use delegates "all issues" to an arbitrator—including all questions regarding arbitrability, enforceability and scope. The contract

also expressly incorporates the AAA rules. Thus, if there is any dispute as to the arbitrability of Plaintiff's claims, an arbitrator is to resolve such issues. *See, e.g.*, *Levy*, 2023 WL 2644352, at *9 (finding that these provisions express "the clear and unmistakable intent of the Parties to submit arbitrability determinations to the arbitrator"); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020) (characterizing the incorporation of the AAA rules constitutes the parties' clear and unmistakable intent to let an arbitrator determine the scope of arbitrability).

Thus, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, EIS respectfully moves for an order compelling this matter to arbitration, as required under Plaintiff's written agreement, and staying this action until arbitration has been completed.

## STATEMENT OF FACTS

On August 30, 2025, Plaintiff enrolled in CreditWorks. *See* accompanying Declaration of Dan Smith ("Smith Decl."), ¶ 3. In order to successfully enroll, Plaintiff had to complete a single webform. *Id*. The form required Plaintiff to enter his personal information—*i.e.*, his name, address, phone number, and e-mail address. *Id*. After he entered his personal information, Plaintiff had to click the "Create Your Account" button on the webform in order to enroll. *Id*. Immediately below the boxes to enter his e-mail address and password, was the following disclosure: "By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id*. A true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 1 to the Smith Declaration. *Id*.

The phrase "Terms of Use Agreement" in the disclosure was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. *Id*., ¶ 4. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of

5

Use.  *Id*.  Thus, before clicking the "Create Your Account" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." *Id*. When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. *Id*. Immediately below the disclosure was a large purple button that reads: "Create Your Account." *Id*. The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage.  *Id*.

After entering his information, Plaintiff clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement. *Id*., ¶ 5. Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button.  *Id*.  A true and correct copy of the Terms of Use that Plaintiff agreed to when he enrolled in CreditWorks is attached as Exhibit 2 to the Smith Declaration.  *Id*.

The Terms of Use contains an Arbitration Agreement, which requires Plaintiff to litigate, among other things, all claims against "ECS" that "relate to" or "arise out of" his agreement in arbitration on a non-class basis.  *Id*., ¶ 6. The Terms of Use defines "ECS" to include its "parent entities, subsidiaries, [and] affiliates . . . ." *Id*. and Ex. 2. During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. *Id*.  By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within that contract.  *Id*.  Moreover, by including EIS within the "Overview and Acceptance of Terms" section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract.  *Id*. Additionally, the Arbitration Agreement expressly incorporates the AAA rules.  *Id*.

6

At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information. *Id.*, ¶ 7. Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks. *Id*. The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), and the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)." *Id*.

## **LEGAL ARGUMENT**

### I.    **THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The party seeking to compel arbitration bears the burden of demonstrating "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)) (quoting *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011)).

As demonstrated below, the arbitration agreement in the Terms of Use Agreement is valid, and to the extent that there is a dispute over the arbitrability of Plaintiff's claims, such questions have been delegated to an arbitrator to decide.

### A.  A Valid Agreement to Arbitrate Exists

State contract formation law determines the validity of arbitration agreements. *Rivera Colón v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 207 (1st Cir. 2019).  Under Maine contract law principles, "[a] contract exists when the parties mutually assent to be bound by all its material terms [and] the assent is either expressly or impliedly manifested in the contract." *McClare v. Rocha*, 2014 M.E. 4, ¶ 16, 86 A.3d 22 (2014) (quotation marks omitted). "It is essential to the formation of a valid and enforceable contract that there be a meeting of the minds of the parties to the contract, i.e. a mutual assent to be bound by its terms ...." *Ouellette v. Bolduc*, 440 A.2d 1042, 1045 (Me. 1982).  Courts in Maine, however, have emphasized that a party need not actually have read the terms of the contract in order to be bound by them.  *See Francis v. Stinson*, 2000 ME 173, ¶ 42, 760 A.2d 209 (2000) (stating that "parties to a contract are deemed to have read the contract and are bound by its terms").

The "Maine legislature[ has a] strong policy favoring arbitration." *Snow v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2017 ME 239, ¶ 10, 176 A.3d 729 (2017) (quotation marks omitted). Courts in this Circuit routinely enforce clickwrap agreements—whether they contain arbitration provisions or other contractual terms.  *See*, *e.g.*, *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) (noting that courts should not apply different legal principles just because a contract is formed online); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (explaining that "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract" (quotation marks omitted)).  As a matter of law,

8

Plaintiff agreed to the Terms of Use Agreement because: (1) he had clear notice of the Terms of Use at the time he enrolled, (2) he was admonished that, by clicking an adjacent button, he was agreeing to be bound by the Terms of Use; and (3) he clicked the button, thereby manifesting his assent to the Terms of Use Agreement.

Every court in the United States—including the Fourth, Ninth, and Eleventh Circuits—has concluded that the CreditWorks signup process places users on inquiry notice that they were agreeing to be bound by the Terms of Use. *Austin*, 148 F.4th 194; *Lamonaco*, 141 F.4th 1343; *Newton*, 2025 WL 2102084; *Meeks*, 2022 WL 17958634; *see also Tadic*, 2019 WL 11499103, at *2 ("The Plaintiff is bound by the Terms and Conditions, including the agreement obligating her to arbitrate on an individual basis, her claims against ConsumerInfo.com, Inc. or its parent and affiliated entities. The Plaintiff's act of clicking on the SUBMIT SECURE ORDER button signified her acceptance of the Terms and Conditions."); *Capps*, 2023 WL 3030990, at *3-*4 ("[T]he court finds that a reasonable user would have seen the notice and would have been able to locate the Terms of Use Agreement via the hyperlink."); *Levy*, 2023 WL 2644352, at *7 ("Plaintiff was provided with reasonably conspicuous notice of the arbitration agreement in the 2019 TOU."); *Cimillo*, 2023 WL 2473403, at *5-7 ("The Court finds that the undisputed facts indicate the webpage design presented, and the language used in the July 2019 TOU, clearly and conspicuously communicated the terms of the Arbitration Agreement to plaintiff, and that plaintiff affirmatively indicated she agreed to them."); *DeVries*, 2017 WL 733096, at *6 ("The text containing the Terms and Conditions hyperlink was located directly above that button and indicated that clicking "Submit Secure Purchase" constituted acceptance of those terms'").

## B.    EIS May Directly Enforce The Arbitration Agreement

9

EIS's status as a party to the Arbitration Agreement in the CreditWorks Terms of Use is well-established.  Courts throughout the country have so concluded.  *See Pipoly*, 2023 WL 5184188, at *3 (finding that EIS "is a party to the Arbitration Agreement" and "therefore, may enforce [it]"); *Capps*, 2023 WL 3030990, at *5-*6 ("[T]he court concludes that defendant [EIS] was a party to the Arbitration Agreement."); *Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Meeks*, 2022 WL 17958634, at *2 ("Because the district court's denial of the motion to compel arbitration was the result of a legal error and the record is sufficiently developed to allow us to do so, we hold that [EIS] is a party to the arbitration provision."); *Alvarez*, 2023 WL 2519249, at *6 ("There is no reasonable basis to find that Plaintiff has not assented to arbitration with [EIS].").

These holdings comport with the terms of the contract.  The "Overview and Acceptance of Terms" section of the Terms of Use defines ECS to include its affiliates, such as EIS.  Smith Decl., Ex. 2.  The Arbitration Agreement contained within the Terms of Use incorporates the same definition, and includes a straightforward, bilateral promise:  "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law[.]"  *Id*.  And the contract clearly identifies the promisors and promisees—that is, the parties—with respect to that promise.  *Id*.  (defining "ECS" to include its "parent entities, subsidiaries, [and] affiliates (including, but not limited to, Experian Information Solutions, Inc.). . . .").  EIS is thus expressly swept within the definitions of "ECS" and "us" under the Arbitration Agreement, and thus qualifies as a promisee (and promisor) entitled to enforce the Arbitration Agreement that Plaintiffs entered. *See Levy*, 2023 WL 2644352, at *6-7; *Meeks*, 2022 WL 17958634, at *2; *Alvarez*, 2023 WL 2519249, at *6.

Thus, by disclosing to users they are agreeing to arbitrate with ECS's affiliates, and requiring affirmative action by Plaintiff to assent to those terms, Plaintiff is bound by the Terms of Use Agreement and its obligation that he arbitrate his claims against EIS.

### C.   An Arbitrator Is To Decide The Arbitrability Of Plaintiffs' Claims

If there is any question as to whether Plaintiffs' claims fall within the scope of the Arbitration Agreement, that issue also is to be decided by an arbitrator:  "All issues are for the arbitrator to decide . . . ."  Smith Decl., Ex. 2.  Where, as here, "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein*, 139 S.Ct. at 527–30; *Coulter*, 2021 WL 735726 at \*4 (finding the Terms of Use's delegation clause "constitutes a 'clear and unmistakable' delegation clause under *Henry Schein* and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision").

## II.   THE ACTION MUST BE STAYED PENDING ARBITRATION

Section 3 of the FAA expressly provides that a district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith v. Spizzirri*, 144 S.Ct. 1173, 1175 (2024) ("The question here is whether § 3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration.  It does not.").

### CONCLUSION

For the foregoing reasons, EIS respectfully requests that the Court grant this Motion, enter an order directing Plaintiff to arbitrate his claims against EIS on a non-class basis, and stay this action pending the completion of arbitration.

Dated:  June 3, 2026                                          Respectfully submitted,

*/s/ Francis G. Kelleher*

11

Francis G. Kelleher (Bar No. 8516)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: 617-570-1000
Email:  FKelleher@goodwinlaw.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

12